1

**E-Filed 5/8/2007**

2

3

4

5

6

7                        NOT FOR CITATION

8            **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                        **SAN JOSE DIVISION**

11

12   ANTHONY BRITO,                          Case Number C 06-06424-JF

13                      Plaintiff,           ORDER[1] GRANTING MOTION TO
                                             STAY
14              v.

15   NEW UNITED MOTOR MANUFACTURING,         [Doc. No. 12, 22]
     INC.,
16
                     Defendant.
17

18

19        Defendant New United Motor Manufacturing, Inc. ("NUMMI") moves to dismiss

20   Plaintiff's complaint, or alternatively, to stay the instant action pursuant to *Colorado River Water*

21   *Conservation Dist. v. United States,* 424 U.S. 800 (1976).  For the reasons discussed below, the

22   Court will stay the action under the *Colorado River* doctrine pending resolution of any appellate

23   proceedings in the state court action.

24                        **I. BACKGROUND**

25        Plaintiff Anthony Brito ("Brito") alleges the following in his operative federal complaint

26   ("Federal Complaint"):  He worked as an assembly worker at NUMMI from October, 1985 until

27   _____

28        [1]  This disposition is not designated for publication and may not be cited.

     Case No. C 06-06424 JF
     ORDER GRANTING MOTION TO STAY
     (JFEX2)

1  approximately January, 2004.  *Fed. Compl.* ¶ 9.  He suffered an injury on October 17, 2003 that

2  resulted in a rib fracture.  *Id.* at ¶ 10.  He requested time off because "he was suffering from

3  excruciating pain and needed time off and accommodation to recover from his injury."  *Id.* at ¶

4  11. NUMMI denied his request and "willfully instructed, required, and forced [him] to continue

5  working."  *Id.* at ¶ 12.  NUMMI's medical staff examined Brito and concluded that he had a

6  bruised rib, although it actually was fractured.  *Id.* at ¶ 13.  Brito attempted to work, but was

7  unable to do so.  *Id.* at ¶ 14.  "[He] kept complaining of pain and could not perform work as

8  instructed, required, and forced, and when [he] kept asking for time off so he could recover from

9  his injury and take his daughter to a medical appointment for a serious condition, NUMMI

10 willfully denied leave and willfully fired [him]."  *Id.*  Brito's employment was terminated in

11 January, 2004 in violation of 29 U.S.C. § 2612(a)(1) (FMLA). NUMMI knew that its conduct

12 violated FMLA or showed reckless disregard as to whether it violated FMLA.  *Id.* at ¶ 15.

13        On January 10, 2005, Brito filed a complaint ("Initial State Complaint") against NUMMI

14 in the Alameda Superior Court, asserting claims of general negligence, intentional tort, and

15 wrongful termination in violation of public policy.  Initial State Complaint 4-6.  On March 10,

16 2006, Brito filed a First Amended Complaint ("State FAC") that added two defendants, Dr.

17 Lincy Matthew and Interim Healthcare.  State FAC 1.  The wrongful termination claim was

18 asserted only against NUMMI.  State FAC 5.   On June 13, 2006, Brito filed a Second Amended

19 Complaint ("State SAC"), alleging claims of negligent misrepresentation, fraud and concealment,

20 negligence, and termination in violation of public policy including the Family and Medical Leave

21 Act ("FMLA").  State SAC 3-6.  On September 21, 2006 Brito filed a Third Amended Complaint

22 ("State TAC") that did not include three of his prior claims against NUMMI.  It asserted the

23 wrongful termination claim and added a claim for aggravation of work-related injuries by

24 fraudulent concealment under Lab. Code § 3602(b)(2).  State TAC 3-7.

25        Brito filed the Federal Complaint on October 13, 2006, asserting one claim against

26 NUMMI for denial of medical leave in violation of FMLA.  Fed. Compl. 2-3.  On January 22,

27 2007, after filing the Federal Complaint, Brito filed a Fourth Amended Complaint ("State

28 FRAC") in the state court action.  The State FRAC included one claim against NUMMI for

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1  termination in violation of public policy, including FMLA.  On January 29, 2007, NUMMI

2  moved for summary judgment in the state action.  The motion was granted on April 13, 2007.

3  Judgment against Brito was entered on April 24, 2007.  As of the date of Brito's most recent

4  filing in the instant federal action, the period in which to appeal that judgment had not expired.

5       On February 21, 2007, NUMMI moved to dismiss the Federal Complaint under the

6  *Colorado River* doctrine.  In the alternative, NUMMI moved for an order to stay the instant

7  action pending the resolution of any appellate proceedings in the state court action.  Brito

8  opposes the motion.  The Court heard oral argument on April 20, 2007.  On April 30, 2007, the

9  parties submitted supplemental briefing regarding the effect of the state court's grant of summary

10  judgment in favor of NUMMI.[2]

## II.  LEGAL STANDARD

12       "[G]enerally, as between state and federal courts, the rule is that 'the pendency of an

13  action in the state court is no bar to proceedings concerning the same matter in the Federal court

14  having jurisdiction . . . .'"  *Colorado River*, 424 U.S. at 817 (citing *McClellan v. Carland*, 217

15  U.S. 268, 282 (1910)).  However, in exceptional circumstances, it is appropriate for a federal

16  court to abstain from hearing a case that is concurrent with a state court action.  *Colorado River*,

17  424 U.S. at 818.

> In *Colorado River*, the [Supreme] Court articulated four factors for determining
> whether sufficiently exceptional circumstances exist to warrant abstention: (1)
> whether either the state or federal court has exercised jurisdiction over a *res*; (2)
> the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal
> litigation; and (4) the order in which the forums obtained jurisdiction.  In [*Moses
> H. Cone Memorial Hosp. v. Mercury Constr. Corp.*], the Court added two more
> considerations: (5) whether federal or state law controls and (6) whether the state
> court is adequate to protect the parties' rights.

23  *Nakash v. Marciano*, 882 F.2d 1411 (9th Cir. 1989) (internal citations omitted).  "No one factor

24  is necessarily determinative; a carefully considered judgment taking into account both the

25  obligation to exercise jurisdiction and the combination of factors counseling against that exercise

26

27

28       [2]  NUMMI requests judicial notice of the state court's order granting summary judgment
and the preceding papers filed by the parties.  That request will be granted.

3

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1   is required. Only the clearest of justifications will warrant dismissal." *Colorado River,* 424 U.S.

2   at 818-19.  The Supreme Court has indicated that the *Colorado River* factors are "to be applied in

3   a pragmatic, flexible manner with a view to the realities of the case at hand."  *Moses H. Cone*

4   *Mem'l Hosp. v. Mercury Constr. Corp*., 460 U.S. 1, 21 (1983).   In addition to the enumerated

5   factors, the Ninth Circuit also has considered the possibility that the plaintiff is forum shopping

6   in filing both state and federal claim. "The final factor to consider is whether the second suit by

7   [plaintiff] is an attempt to forum shop or avoid adverse rulings by the state court." *Nakash*, 882

8   F.2d at 1417.

9                                                    **III. DISCUSSION**

10          NUMMI relies on three of the factors enumerated in *Colorado River* to support its

11   assertion that dismissal or a stay is proper in this case: the risk of piecemeal litigation, the order

12   in which the complaints were filed, and the adequacy of the state proceeding to protect Brito's

13   rights.  NUMMI also asserts that Brito is forum shopping to avoid an adverse ruling by the state

14   court.  Brito opposes NUMMI's motion on the basis that it

15          (1) fails to address the rule that Colorado River abstention is not applicable to
             civil rights cases, which this case is; (2) fails to even mention the "exceptional
16           circumstances" requirement for Colorado River abstention, much less does it
             demonstrate "exceptional circumstances"; and (3) incorrectly asserts that
17           plaintiff's state Tameny claim (tortious termination in violation of public policy)
             will adequately protect plaintiff's federal right (FMLA) when only the federal
18           claim authorizes attorney's fees.

19   Opp'n. 1.[3]  Finally, Brito argues that cases may not be dismissed under the *Colorado River*

20   doctrine.

21   **A.      The Applicability of the *Colorado River* Doctrine to Civil Rights Cases**

22          Brito argues that application of the *Colorado River* doctrine is not appropriate in this

23   action because *Colorado River* does not apply to civil rights claims and the FMLA concerns civil

24   rights.  This argument is unsupported by authority.  Although the FMLA reasonably may be

25   characterized as a civil rights statute, there is no indication that *Colorado River* is inapplicable to

26   _____

27          [3]  Moreover, Brito asserts that NUMMI's motion to dismiss based on Rules 12(b)(1) and
     12(b)(6) is frivolous because NUMMI concedes that this Court has jurisdiction over FMLA
28   claims.

                                                    4

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1  civil rights cases.[4]  The Ninth Circuit addressed this question in *Tovar v. Billmeyer*, 609 F.2d

2  1291, 1293 (9th Cir. 1980).  "Dismissal, however, is proper only when, in the judgment of the

3  court, these consequences outweigh in a given situation the unflagging obligation of the federal

4  courts to exercise the jurisdiction given to them.  This obligation is particularly weighty when

5  those seeking a hearing in federal court are asserting, as the appellants are here, their right to

6  relief under 42 U.S.C. § 1983." *Tovar*, 609 F.2d at 1293.   Thus, while the court may require a

7  higher standard for cases involving § 1983 claims, it does not prohibit the application of the

8  *Colorado River* doctrine.  In *Tovar*, the court determined that circumstances did not exist to

9  warrant abstention, but did not preclude such a possibility.  **"**While we need not conjecture

10  whether there exist circumstances that could outweigh the 'unflagging obligation' in section

11  1983 cases, we are convinced that they do not exist in this case." *Id.*[5]   Accordingly, the Court

12  concludes that even if the FMLA is accorded a status similar to that of § 1983, this Court still

13  may apply the *Colorado River* doctrine.

14  **B.        The Relationship Between Brito's State Court and Federal Court Proceedings**

15         The Supreme Court has held that in some situations a district court may dismiss a federal

16  claim where the federal court has concurrent jurisdiction with a state court as a result of parallel

17  state and federal proceedings.  *See Cone*, 460 U.S. at 14-15.  Exact parallelism between the state

18  and federal claims, however, is not required.  The Ninth Circuit has held that "[i]t is enough if

19  the two proceedings are "substantially similar." *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th

20  Cir. 1989).  Courts of this district have held state and federal proceedings to be "substantially

21  similar" when they arise out of the same alleged conduct, *see Silvaco Data Sys. v. Technology*

22

23         [4]  Brito quotes The Rutter Group as stating that "Colorado River abstention is generally
not appropriate where monetary damages are sought under federal civil rights law (42 U.S.C. §
24  1983) while state court proceedings are pending."  Even if it were binding authority, which it is
not, this statement does not set forth an absolute bar to the application of *Colorado River*
25  abstention in civil rights cases.  Instead, it states merely that such application is "generally not
appropriate."
26

27         [5]  *See also Le v. County of Contra Costa*, 1999 U.S. Dist. LEXIS 19611 *2-3 (N.D. Cal.
1999) (stating that although "the obligation to exercise its jurisdiction is particularly weighty in
28  civil rights cases . . . there is no hard and fast rule against a stay in such case.").

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1   *Modeling Assocs.*, 896 F. Supp. 973, 976 (N.D. Cal. 1995), and when they involve "substantially

2   the same parties" and "are premised on the same interactions between the parties," *Thiam v.*

3   *Fillmore Props., L.L.C.*, 2005 U.S. Dist. LEXIS 40410 (N.D. Cal. 2005).

4            Brito's claims against NUMMI in the state court and federal court actions are asserted

5   against the same party and arise from the same alleged conduct. Although Brito names other

6   defendants in the state action, the state wrongful termination claim only is asserted against

7   NUMMI, and the Federal Complaint likewise only is asserted against NUMMI.[6]  Comparison of

8   the State FRAC to the Federal Complaint reveals that the pleading language and facts alleged in

9   both are almost identical.  The only substantive factual difference between the two is that the

10  Federal Complaint alleges that Brito asked for time off to recover from his injury and to "take his

11  daughter to a medical appointment for a serious condition," Fed. Compl. ¶ 14, while the State

12  FRAC makes no reference to Brito's daughter. Brito bases his public policy claim on "USC

13  §2601, et seq. (aka 'FAMILY MEDICAL LEAVE ACT')."  State FRAC ¶ 29.  Likewise, Brito's

14  federal claim alleges that NUMMI "willfully terminated plaintiff in violation of 29 USCA

15  §2612(a)(1)(FMLA)."  Fed. Compl. ¶ 15.  Brito's state and federal claims thus allege the same

16  essential facts, involve the same parties, and are premised on the same federal law.  The claims

17  are at least "substantially similar" if not "identical."

18  **C.       Exceptional Circumstances Under the *Colorado River* Doctrine**

19           **1.       Risk of Piecemeal Litigation**

20           NUMMI asserts that if Brito's claims for wrongful termination proceed concurrently in

21  both state and federal court, there is a risk of piecemeal litigation because both claims are based

22  on the same set of facts and legal issues.  "Piecemeal litigation occurs when different tribunals

23  consider the same issue, thereby duplicating efforts and possibly reaching different results."

24  *American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).[7]

25

26       [6] Brito refers to this as a  "Tameny claim," under *Tameny v. Atlantic Richfield Co*, 27
     Cal.3d 167 (1980).  Opp'n. 4.

27
     [7] The Ninth Circuit decided against a stay in *Travelers Indemnity Co. v. Madonna*, 914
28  F.2d 1364, 1369 (9th Cir. 1990). The court held that the only potentially applicable factor, the

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1   In the instant case, both Brito's state law and federal law claims are based upon violations of the

2   FMLA.  The complaints allege essentially the same facts, and seek virtually identical relief.

3   Discovery in both cases would require taking the depositions of the same witnesses, and

4   requesting the same documents.  The duplication of effort would be extensive.  Furthermore, in

5   order to find NUMMI liable in the state action, the state court would have to find a violation of

6   the FMLA.  In order for Brito to prevail in the federal action, the Court will have to make the

7   same determination: that NUMMI violated the FMLA.  The risk of piecemeal litigation in this

8   case is significant.

9          **2.       Sequence of Filing of State and Federal Complaints**

10         The second factor that NUMMI asserts in favor of a stay is the order in which the courts

11  obtained jurisdiction.  NUMMI points out that the Initial State Complaint was filed in the

12  Alameda Superior Court on January 10, 2005 and that the Federal Complaint was filed nearly

13  two years later on October 13, 2006.  The state action has now proceeded to summary judgment.

14  Brito argues that the judgment against him in the state action does not have preclusive effect.

15  Assuming without deciding that this is correct, it is still true that the state action has progressed

16  much further than the instant federal action, a fact that weighs strongly in favor of a stay.[8]

17

18  ───────────────────

19  risk of piecemeal litigation, was not sufficient to constitute exceptional circumstances.  The court
    reasoned that this case involved ordinary contract and tort issues, which were not exceptional, as

20  opposed to "federal legislation evincing a federal policy to avoid piecemeal litigation." *Travelers
    Indemnity Co.,* 843 F.2d at 1258.

21
          [8] This conclusion is in accord with Ninth Circuit precedent.  In *Nakash*, the court held

22  that a stay was appropriate under *Colorado River* considering that the state action had been
    ongoing for over three and a half years, had produced extensive discovery, and the court had

23  heard several hearings.  "[The] state case had progressed far beyond [the federal] case, indicating
    that it would be highly inefficient to allow the federal litigation to proceed."  *Nakash*, 882 F.2d at

24  1415.  In *American International Underwriters*, the Ninth Circuit also found in favor of
    abstention based on two-and-a-half years of litigation in state court and substantial discovery.

25  *American International Underwriters,* 843 F.2d at 1258.  The court also considered the fact that
    the plaintiff had chosen the state court as its initial forum, when it could have brought the case in

26  federal court.  *See also Ryder Truck Rental v. Action Food Services*, 554 F.Supp. 277, 280 (C.D.
    Cal. 1983) (stating that, "[h]aving elected state court, plaintiff should be bound by its choice

27  absent compelling reasons to seek relief in another forum.").

28

1    **3.    Adequacy of the State Proceedings to Protect Brito's Rights Under FMLA**

2    Brito's prayer for relief with respect to his state court claim resembles very closely his

3    prayer for relief with respect to his federal claim.  In the State FRAC, Brito requests the

4    following relief against NUMMI for termination in violation of public policy, including FMLA:

5    (1) Back pay; (2) Front pay; (3) Damages for general pain and suffering; (4) Costs of
     finding alternative employment; (5) General and compensatory damages;
6    (6)Consequential damages; (7) Punitive Damages; (8) Pre-judgment and post-judgment
     interest; (9) Attorneys fees and costs of suit pursuant [to] statute; (10) Any other relief as
7    the Court may deem proper.

8    State FRAC 7.  Brito seeks the following relief in the Federal Complaint:

9    (1) For compensation and benefits lost 'by reason of the violation,'; (2) For other
     monetary losses sustained 'as a direct result of the violation,'; (3) For 'appropriate'
10   equitable relief, including employment, reinstatement and promotion; (4) For interest on
     any award of such damages; (5) For an amount equal to the entire award of lost wages,
11   benefits, etc. and interest (discussed above) as punitive or liquidated damages; (6) For
     compensatory damages in addition to additional liquidated damages; (7) For reasonable
12   attorney fees, expert witness fees, and other costs of suit; (8) Loss of future earning (front
     pay); (9) Medical expenses; (10) Cost of Heath Insurance and Conversion Privileges
13   including, but not limited to, retroactive premiums, (11)For such other relief as the court
     deems proper.

14

15   Fed. Compl. 3-4.  NUMMI argues that Brito cannot show that the state proceeding cannot

16   adequately protect his rights under the FMLA.  Brito contends that the state court will not

17   provide adequate protection, because his state law claim against NUMMI does not entitle him to

18   attorney's fees[9] because only his tortious termination of public policy claim and not his direct

19   claim under FMLA is before the state court.   However, even assuming without deciding that this

20   is true, the possibility of attorney's fees, alone, is insufficient to preclude a stay under the

21   *Colorado River* doctrine.[10]  Moreover, despite Brito's claim that he cannot obtain attorney's fees

22

23       [9]  The state law claim of tortious termination in violation of public policy is asserted by
     Brito under *Tameny v. Atlantic Richfield Co*, 27 Cal.3d 167 (1980), which he states does not
24   provide for attorney's fees.  The FMLA, however, expressly includes an attorney's fees provision
     as 29 U.S.C. § 2617(a)(3).
25

26       [10]  Other courts have found abstention appropriate when the only difference between the
     state and the federal forum was the availability of attorney's fees in the federal action.  The
27   District Court for the Eastern District of North Carolina held that "[b]ecause the parties, the
     operative facts underlying both the state and federal suits, and the issues are substantially similar
28   . . . the negligible difference in remedies sought does not require a finding that the suits are not

8

1   in his state court claim, he included "[a]ttorneys fees and costs of suit pursuant [to] statute" in his

2   prayer for relief.  State FRAC 4.

3   **D.      Forum Shopping**

4          NUMMI alleges that Brito may be forum shopping in "an attempt to negate a potential

5   order by the Alameda County Superior Court granting NUMMI's motion for summary judgment

6   as to [Brito's] claim for wrongful termination in violation of FMLA."  Brito asserts that

7   NUMMI's contention that he is forum shopping is incorrect given that his federal claim includes

8   a potential entitlement to attorney's fees and his state claim does not.  The Ninth Circuit

9   addressed the issue of forum shopping in *American International Underwriters*.  Affirming the

10  district court's holding that plaintiff was forum shopping by filing a later claim in federal court,

11  the Ninth Circuit stated "[a]fter two-and-a-half years, AIU is abandoning its state court case

12  solely because it believes that the Federal Rules of Evidence are more favorable to it than the

13  state evidentiary rules. This epitomizes forum shopping."  *American International Underwriters*,

14  843 F.2d at 1259.  The Ninth Court further held that an attempt to forum shop or avoid an

15  adverse ruling by the state court weighs strongly in favor of abstention.  *Nakash*, 882 F.2d at

16  1417.  The Court concludes that the procedural posture of this case and of the state action gives

17  rise to a strong inference of forum shopping, adding further support to a stay or dismissal of the

18  instant action.

19  **E.      Dismissal Under the *Colorado River* Doctrine**

20         Finally, Brito contends that the action may not be dismissed under *Colorado River* but

21  only may be stayed.  This specific question came before the Ninth Circuit in *Attwood v.*

22  *Mendocino Coast Dist. Hospital*, 886 F.2d 241 (9th Cir. 1989).  "The issue before us is narrow,

23  but a question of first impression in this circuit: when a district court declines to exercise its

24  jurisdiction under *Colorado River,* may it dismiss the action without prejudice or must the court

25  ───────────────────

26  parallel."  *Smith v. Raleigh Dist. of the North Carolina Conf. of the Methodist Church*, 1999

27  U.S.WL 1940001, 4 (E.D. N.C. 1999).  *Spizzirri v. Mortgage Electronic Reg. Sys., Inc.*, 2003
    WL 21640468, 3 (N.D. Ill. 2003) held that this difference "only minimally weighs against a

28  stay."

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1  merely stay it?" *Attwood*, 886 F.2d at 242.  In response to this question, the court did not state

2  that dismissal of an action under *Colorado River* never would be appropriate, but it did express a

3  strong preference for the issuance of a stay and reversed the district court's dismissal on the basis

4  that only a stay ensures that the statute of limitations would not bar relief at a later date. *Id.*  In

5  light of this authority, the Court concludes that it should not dismiss the action under *Colorado*

6  *River.*

7       In light of the foregoing, the Court determines that exceptional circumstances exist to

8  warrant the application of the *Colorado River* doctrine.  The supplemental briefing filed by the

9  parties strengthens this conclusion.  While subsequent appellate proceedings may deprive the

10  judgment entered against Brito in state court  of preclusive effect, that possibility does not

11  outweigh the factors discussed above supporting a stay.

12                                        **IV.  ORDER**

13  Good cause therefore appearing, IT IS  HEREBY ORDERED that this action is stayed pending

14  resolution of appellate proceedings in the state court action.

15

16  ————

17  DATED: May 8, 2007

18

19  _____
    JEREMY FOGEL
20  United States District Judge

21

22

23

24

25

26

27

28

                                          10

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)

1   Copies of Order have been served upon the following persons:

2   Eric C Bellafronto          ebellafronto@littler.com, aignaitis@littler.com

3   David Y. Chun               dchun@chunlaw.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11

Case No. C 06-06424 JF
ORDER GRANTING MOTION TO STAY
(JFEX2)